# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ELIZABETH WILSON, KARL SINGLETON, SHIRLEY JACKSON, AND KIA HANSARD** : : : : **Plaintiffs** : : v. : : **BOARD OF CONTROL OF THE CITY OF HARRISBURG SCHOOL DISTRICT, CALOBE JACKSON, JR., LES FORD, BRAD FUREY, TRENT HARGROVE, CLARE JONES, AND DR. GERALD KOHN** : : : : : : : **Defendants** : | **CIVIL ACTION NO. 1:10-CV-0353** (Judge Conner) |

## MEMORANDUM

This is a civil rights action filed by four former members of the Harrisburg School District School Board, Elizabeth Wilson, Karl Singleton, Shirley Jackson, and Kia Hansard (collectively "School Board plaintiffs") against the Board of Control of the City of Harrisburg School District, Calobe Jackson, Jr., Les Ford, Brad Furey, Trent Hargrove, Clare Jones, and Dr. Gerald Kohn (collectively "Board of Control") alleging retaliation, conspiracy, and malicious abuse of process in violation of plaintiffs' First and Fourteenth Amendment rights. Presently before the court is a motion (Doc. 20) to dismiss plaintiffs' amended complaint filed by defendants pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the court will grant the motion.

## I. BACKGROUND

### A. Statement of Facts[1]

The present action is the latest iteration of litigation in a long-standing and acrimonious feud between members of the elected School Board of Harrisburg School District, and the appointed Board of Control for the Harrisburg School District. The plaintiffs are former members of the elected School Board for Harrisburg School District and the defendants are the Board of Control of the Harrisburg School District, its individual members (when the cause of action purportedly accrued), and the former Superintendent of the Harrisburg School District, Dr. Gerald Kohn. The strife between the parties stems from the passage of the Pennsylvania Education Empowerment Act ("EEA"), 24 PA. STAT. ANN. §§ 17-1701-B through 17-1716-B, by the Pennsylvania General Assembly in May 2000.

The Pennsylvania General Assembly passed the EEA in 2000 in an attempt to improve the lackluster educational performance of certain school districts within the Commonwealth. Under the EEA, school districts with extraordinary low test performance levels for two consecutive years are certified as "empowerment

---

[1] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the complaint. See infra Part II. However, those portions of the complaint which consist of no more than legal conclusions or a formulaic recitation of the elements of a cause of action have been disregarded. Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).

districts" by the Secretary of Education.[2] In an empowerment district, the mayor of the city in which the school district is located appoints five members of the community to a Board of Control who serve at the mayor's pleasure. 24 PA. STAT. ANN. § 17-1707-B(b). Two additional members of the Board of Control are elected by and from the school district's elected school board. Id.

The Board of Control develops and implements a school district improvement plan. Id. § 17-1704-B. Save for the power to levy taxes, the Board of Control is vested with "all other powers and duties conferred by law" on the elected school board. Id. § 17-1706-B(a); id. § 17-1707-B(c). When an education empowerment district emerges from the statutorily-defined low test performance range and satisfies the goals of the district improvement plan, the certification of the district as an empowerment district is removed and control of the school district returns to the elected school board. Id. § 17-1707-B(f).

The Harrisburg School District became an empowerment district on December 19, 2000. See Bd. of Control of the Harrisburg Sch. Dist. v. Wilson, 82 Pa. D. & C.4th 545, 566, No. 2006 CV 3443 EQ, 2006 WL 4821440 (Pa. Com. Pl. 2006); see also Harrisburg Sch. Dist. v. Zogby, 828 A.2d 1079 (Pa. 2003) (upholding EEA against federal and state constitutional challenge). In the summer of 2006, plaintiffs were serving as elected members of the School Board for Harrisburg School

---

[2] The EEA defines "extraordinary low test performance" as a sixty percent failure rate on the Pennsylvania System of School Assessment tests. 24 Pa. Stat. Ann. § 17-1702-B.

3

District ("School Board"). (Doc. 18 ¶ 7). As a result of the school district's classification as an empowerment district, the sole power retained by the elected board was its tax levying authority. Defendants Board of Control directed School Board plaintiffs to approve a SWAP.[3] (Id. ¶¶ 9-14, 17). When School Board plaintiffs requested further information to aid their decision on the SWAP, the Board of Control refused to provide it. (Id. ¶¶ 18-19). Instead, the Board of Control re-directed the School Board to approve the SWAP and forbade debate concerning its ramifications on residents and the School District. (Id. ¶¶ 20-21). The Board of Control defendants threatened School Board plaintiffs that unless they approved the SWAP, the Board of Control would initiate proceedings to remove School Board plaintiffs from office. (Id. ¶ 22). The School Board plaintiffs refused to approve the SWAP. (Id. ¶ 23).

Subsequently, the Board of Control filed a lawsuit in the Dauphin County Court of Common Pleas of Pennsylvania to remove School Board plaintiffs from their elected positions. (Id.) School Board plaintiffs allege that their removal from

---

[3] In commercial law, a swap is generally defined as a complex financial transaction between parties, "usually involving an intermediary or a dealer, in which payments or rates are exchanged over a specified period and according to specified conditions." BLACK'S LAW DICTIONARY 1585 (9th ed. 2009). The exact nature of the "SWAPs" in the instant matter is unknown, however the Dauphin County Court of Common Pleas, in litigation related to this matter, noted that "such financial undertakings are specifically authorized by the General Assembly to be fiscal vehicles available to school districts to manage their monies in a more efficient fashion, and those same types of transactions had, in fact, been previously undertaken by the school district." Wilson, 82 Pa. D. & C.4th at 553 rev'd, 935 A.2d 936 (2007).

4

the School Board was needless because the Board of Control obtained a legal opinion from their solicitor and an opinion from the Mayor of Harrisburg that the School Board's approval was unnecessary to authorize the SWAP. (Id. ¶¶ 34, 35).

By court order on October 9, 2006, the Dauphin County Court of Common Pleas removed plaintiffs from the School Board, assessed a judgment of $48,000.00 against them, and established a $100,000.00 cash bond to appeal the decision. (Id. ¶ 24). School Board plaintiffs sought to appeal, but according to plaintiffs, the Board of Control refused to authorize the Pennsylvania School Boards' Association Insurance Trust to continue representation of School Board plaintiffs. (Id. ¶ 25). Various members of the Harrisburg community sprang to School Board plaintiffs' aid and an appeal was timely filed. (Id. ¶¶ 26-27).

The Commonwealth Court of Pennsylvania reversed the lower court's ruling on November 9, 2007. (Id. ¶ 28). However the reversal came after the expiration of School Board plaintiffs' elected terms and too late for plaintiffs to submit the necessary nomination papers to pursue re-election to the Board. (Id. ¶ 29). School Board plaintiffs allege that despite the fact that the SWAP had been approved by the School Board, including plaintiffs' replacements, the Board of Control continued to pursue the litigation after the reversal. (Id. ¶ 30). The Board of Control filed an application for reconsideration of the reversal, and on December 25, 2007, the Commonwealth Court denied that application. (Id.) Undeterred, the Board of Control filed a Petition for Allowance of Appeal in the

5

Pennsylvania Supreme Court.  (Id. ¶ 31).  On February 19, 2008, the Board of Control withdrew the petition.  (Id. ¶ 32).

### B. **Procedural History**

School Board plaintiffs filed suit against the Board of Control defendants on February 17, 2010, pursuant to 28 U.S.C. § 1983.  Plaintiffs filed an amended complaint on June 14, 2010.  (Doc. 18).  In Count I, School Board plaintiffs allege Board of Control defendants violated their First Amendment rights by prohibiting debate and discussion on the proposed SWAP, and by retaliating against plaintiffs for refusing to approve the SWAP.  (Id. ¶¶ 38-44).  In Count II, School Board plaintiffs allege that Board of Control defendants conspired to deprive plaintiffs of their First Amendment rights and their right of access to the courts.  (Id. ¶¶ 45-47).  Finally, in Count III, School Board plaintiffs allege a state law claim of malicious abuse of process stemming from the Board of Control's continued litigation against plaintiffs.  (Id. ¶¶ 48-53).  On June 28, 2010, Board of Control defendants filed the instant motion (Doc. 20) to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The motion has been fully briefed and is now ripe for disposition.

## II. **STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a two-step inquiry.  In the first step, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Fowler v. UPMC

Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009) (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, --- U.S. at ---, 129 S. Ct. at 1949. When the complaint fails to establish defendant liability, however, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III.   **DISCUSSION**

School Board plaintiffs bring a First Amendment claim and a conspiracy claim pursuant to 42 U.S.C. § 1983, and a malicious abuse of process claim pursuant to state law. The court will consider the § 1983 claims first.

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under this section, the plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)). In the instant matter, the Board of Control defendants aver that School Board plaintiffs' § 1983 claims are time-barred.

A statute of limitations defense may be raised by way of a 12(b)(6) motion when the complaint on its face clearly establishes noncompliance with the limitations period. Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002); Oshiver v.

Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994).[4] Under a § 1983 cause of action, courts apply the state law statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261 (1985); Sameric Corp. of Del., Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998). The Pennsylvania statute of limitations for personal injury is two years. 42 PA. CONS. STAT. § 5524.

The determination of when a cause of action accrues for purposes of the statute of limitations is governed by federal law. Wallace v. Kato, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."). Accrual occurs when the plaintiff has 'a complete and present cause of action.' Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997) (quoting Rawlings v. Ray, 312 U.S. 96, 98 (1941)). In other words, the clock starts "when the plaintiff can file suit and obtain relief." Id. at 201. In the instant matter, with the exception of Board of Control defendants' withdrawal of their petition for allowance of appeal to the Pennsylvania Supreme Court on February 19, 2008, all other events

---

[4] As the defenses listed in Federal Rule of Civil Procedure 12(b) do not include a limitations defense, ordinarily, a statute of limitations defense must be raised in the answer to the complaint. However, the "Third Circuit Rule," dating back to at least 1948, permits a limitations defense to be raised under a 12(b)(6) motion. See Robinson, 313 F.3d at 135 & n.3. A statute of limitations defense in a Rule 12(b) motion may only succeed if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.' Id. at 135 (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)). 'If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).' Id. (quoting Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978)).

described in the complaint occurred more than two years prior to the filing of the original complaint on February 17, 2010.[5]

### A. First Amendment Claim

In Count I, School Board plaintiffs allege the Board of Control violated their First Amendment rights and retaliated against them. "First Amendment retaliation claims are always individually actionable, even when relatively minor." O'Connor v. City of Newark, 440 F.3d 125, 127-28 (3d Cir. 2006). School Board plaintiffs' First Amendment claim accrued when they knew or had reason to know of the First Amendment injury. See Mattis v. Dohman, 260 Fed. Appx. 458, 461 n.3 (3d Cir. 2008) (citing Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991)). In the instant matter, School Board plaintiffs knew or had reason to know of their injury at the latest on November 9, 2007 when the Commonwealth Court reversed the Dauphin County Court of Common Pleas. The reversal came after the expiration of the School Board plaintiffs' elected terms and after the deadline to file

---

[5] School Board plaintiffs filed their amended complaint (Doc. 18), which is the subject of the present motion to dismiss (Doc. 20), on June 14, 2010. School Board plaintiffs' claims in the amended complaint, which are substantially similar to those set forth in the original complaint, are deemed to relate-back to the filing of the original complaint. See Fed. R. Civ. P. 15(c)(1)(B) ("An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."); Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004) (stating that "amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading fall within Rule 15(c)"). The court, therefore, considers February 17, 2010 to be the applicable date for a statute of limitations determination.

11

the required nomination papers to pursue re-election to the Board. (Doc. 18 ¶ 29). At this point, the injury to the School Board plaintiffs had manifested itself. It is clear from the face of the complaint that plaintiffs' First Amendment injury, which materialized more than two years prior to the filing of the instant action on February 17, 2010, is barred by the statute of limitations.

### B. Conspiracy Claim

In Count II, School Board plaintiffs allege that the Board of Control defendants conspired to deprive them of their First and Fourteenth Amendment rights. (Doc. 18 ¶¶45-47). The statute of limitations for a § 1983 civil conspiracy is the same as that for the underlying action forming the basis of the conspiracy. Mumma v. High-Spec, Inc., 2009 WL 4723258 at *4 (M.D. Pa. 2009). Thus a § 1983 conspiracy claim is subject to a two-year limitations period. Id. The limitations period begins to accrue in a § 1983 civil conspiracy claim on the date of each overt act causing injury to the plaintiffs. Kost v. Kozakiewicz, 1 F.3d 176, 190-91 (3d Cir. 1993) (citing Wells v. Rockefeller, 728 F.2d 209, 217 (3d Cir. 1984)).

It is clear from the face of the complaint, that the last act alleged that could possibly form part of the conspiracy to deprive School Board plaintiffs of their First and Fourteenth Amendment rights was defendants' January 25, 2008 petition for allowance of appeal to the Pennsylvania Supreme Court. The withdraw of the petition on February 19, 2008 does not represent an act *in furtherance* of the alleged conspiracy; nor do School Board plaintiffs allege that the withdrawal of the petition caused them any injury. Therefore, the February 19, 2008 withdrawal of the petition

12

cannot be the basis of a § 1983 conspiracy claim. As all other events prior to February 19, 2008 are outside the statute of limitations period, the conspiracy claim is time-barred.

### C. <u>**Tolling the Statute of Limitations**</u>

The court is barred from hearing School Board plaintiffs § 1983 First Amendment and conspiracy claims unless the statute of limitations has been tolled. State tolling rules govern federal actions pursuant to § 1983, unless "inconsistent with the federal policy underlying the cause of action under consideration." <u>Bd. of Regents v. Tomanio</u>, 446 U.S. 478, 485 (1980); <u>see</u> <u>also</u> <u>Wallace</u>, 549 U.S. at 394; <u>Lake v. Arnold</u>, 232 F.3d 360, 369-70 (3d Cir. 2000). School Board plaintiffs do not allege the applicability of any tolling doctrine. Instead, School Board plaintiffs aver that "because they have incorporated each cause of action into their Malicious Abuse of Process claim, all of the causes of actions set forth in the Complaint are of a continuing nature until the litigation ended as a result of Defendants' withdrawal of the Allowance of Appeal." (Doc. 22 at 4). Plaintiffs are mistaken. "Causes of actions that can be brought individually expire with the applicable limitations period. . . and [] time-barred claims cannot be resurrected by being aggregated and labeled continuing violations." <u>O'Connor v. City of Newark</u>, 440 F.3d 125, 128-29 (3d Cir. 2006). First Amendment retaliation claims, such as termination (akin to plaintiffs' removal from the School Board), are individually actionable, <u>see</u> <u>id.</u> at 127 (citing <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002)), and, a separate cause of action for a civil conspiracy claim arises upon each overt act in furtherance of the

13

conspiracy that causes injury to the plaintiff.  See Wilson v. King, 2010 WL 1071651 at *4 (E.D. Pa. 2010).  School Board plaintiffs' First Amendment and conspiracy claims are therefore discrete violations that cannot be anchored to the abuse of process claim in order to survive the statute of limitations bar.

The court finds that School Board plaintiffs § 1983 causes of action in Counts I and II of the amended complaint are time-barred and must be dismissed.  The court declines to exercise supplemental jurisdiction over the remaining state law claim for malicious abuse of process.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.").  Count III will therefore be dismissed.  Plaintiffs may re-assert this claim in state court.[6]

---

[6] The court declines to exercise jurisdiction over the malicious abuse of process claim, and, therefore, does not address the statute of limitations defense, or the other defenses raised by the Board of Control with respect to this claim.  The court would be remiss, however, if it did not encourage the parties to restyle the debate over control of administration to a discourse over appropriate educational programming and budgeting in the midst of a troublesome economic climate.

14

## III. **CONCLUSION**

For the foregoing reasons, defendants' motion (Doc. 20) to dismiss will be granted in its entirety.

An appropriate order follows.

                                        S/ Christopher C. Conner
                                        CHRISTOPHER C. CONNER
                                        United States District Judge

Dated:       December 2, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELIZABETH WILSON**, *et al.*, | : | CIVIL ACTION NO. 1:10-CV-0353 |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiffs** | : | |
| v. | : | |
| | : | |
| **BOARD OF CONTROL OF THE CITY OF HARRISBURG SCHOOL DISTRICT**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 2nd day of December, 2010, upon consideration of the motion (Doc. 20) to dismiss plaintiffs' amended complaint, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Defendants' motion (Doc. 20) to dismiss is GRANTED in its entirety.

2. The Clerk of Court is directed to CLOSE the case.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge